Thank you. May it please the Court, David Gaona for Appellant Christine Nillson. Ms. Nillson is here today to ask this Court to reverse District Judge Sedgwick's opinion and let a jury determine the issues relative to her claims for discrimination pursuant to Title VII, as well as some other matters that are before you. I want to first start out my argument and apologize relative to the opening brief that was filed. It did contain a couple of pagination errors that were identified by the City of Mesa, and I apologize for that. However, the excerpt of record that was attached as an appendix has all of the factual background as set forth in the statement of facts. Because we have limited time, I want to address really two issues. The first issue I want to address is the waiver issue. As Judge Sedgwick determined, it was inconceivable, in effect, that a person like Ms. Nillson, and, in fact, any person applying for a position with the City of Phoenix Police Department, would look at a general waiver and believe that that general waiver in and of itself vitiates all claims or all rights to the discrimination laws and the constitutional laws. And that's why Judge Sedgwick said we cannot look at that and give it the application that the City of Mesa asked this Court to do. It asked Judge Sedgwick to do that, and it asked this Court to do it. That when she signed the general release upon applying for and upon applying to the City of Mesa, that that in and of itself meant that she was throwing away her rights as it relates to employment discrimination laws and as it relates to other Federal statutes that protect her as a person and as an employee or potential employee. What was waived? What was waived was, as she said, she thought that certain things were waived leading to the fact that she was that the City of Mesa was going to be talking to individuals to check her background and that they would not have the opportunity or she would not have the opportunity to sue as it relates to those discussions. But what was not waived is that they would use that information in a way to discriminate against her and put away the discrimination laws that exist in this country. If you want to take the argument by the City of Mesa to its logical conclusion, then the City of Mesa could with abandon and with impunity say that I can't, that they could deny my application to the police force simply because I'm Mexican-American. And I couldn't do a thing about it because I released my ability to say you can't do that. And that's what the City of Mesa is asking this Court to do. The Stroman case, which is really the case that is cited by both parties and was discussed by Judge Sedgwick, is a very important case. But the Stroman case and the cases before Stroman and the cases after Stroman have stood for one proposition, that it is not against public policy to allow somebody to waive their rights under Title VII or other Federal remedial statutes. But if you look at the Stroman case and you look to other cases that predated and postdated Stroman, the facts are very important. We have the employee who had two charges of discrimination pending at the time he signed the release. And that the employee in Stroman signed the release after filing two charges of discrimination and wanting to get unemployment benefits. And in order to get those benefits and not have the employer object, Stroman then entered into an agreement whereby waiver took place relative to all employment actions at that time. That's an appropriate case to say the waiver applies there. We knew it was going to take place relative to two charges of discrimination or perhaps others dealing with the employment relationship because they were pending. In this case, we have a general release that's filed before one becomes an employee, before there is any chance that the employer can take discriminatory action against the particular employee. So the Stroman case is different than the case and the facts in this case. Now, footnote one in Stroman is very important because in footnote one, the Ninth Circuit cited to the Supreme Court case of Newton v. Rummery, which is 480 U.S. 386. And there, the United States Supreme Court said that whether policies underlie a Federal statute render a waiver unenforceable is a question of Federal law. And that Judge Sedgwick agreed with. But what the Court said after that is even more important. The Supreme Court said that a promise is unenforceable if the interest of its enforcement is outweighed in the circumstances by public policy harmed by enforcement of the agreement. Here, we have a situation where the interest of the enforcement is outweighed by the circumstance of the public policy because if we allow these sort of general releases to have the sort then there are no rights to the Title VII laws against discrimination in dealing with employees. It seems to me it wouldn't seem very reasonable to say that such a release could release a Title VII claim, but it might release some claims relating to inquiries  It might, Your Honor. I think as it relates to those claims, and this is a follow-up to Judge Rawlinson's question, a lot of those State law claims that were being pursued by Ms. Nielsen are no longer being pursued, and those are the sort of claims we submit that the release may in fact touch upon and be valid against. What about the ADA claim? You argued that Mesa violated the ADA by investigating and inquiring into her workers' compensation claims before submitting a conditional offer of employment. Why isn't that waived? Because it's part of the investigation. It's part of the investigation, but the action taken from that. The action taken from that is that because you have these other things going on, we consider you a litigation risk. And because we consider you a litigation risk, we're not going to give you a job. But that wasn't the allegation that was made. The allegation that was made was that the ADA was violated by investigating and inquiring into her workers' compensation claim. An ADA substantive claim requires a disability, a finding of disability, and an adverse decision based on disability. So that's not what was alleged. There was no allegation that there was a disability and a failure to hire because of the disability. The sole allegation was regarding the investigation and inquiry. You're right, and Your Honor, I believe, is fully aware of the fact that pre-employment inquiries cannot go into workers' compensation situations. That happened. There was a violation here. And I'm not going to advocate to you right now that the ADA claim should survive. But the ADA claim is important because here we have a situation where they did use that information wrongly. And that goes to issues of pretext that I want to discuss relative to Title VII and retaliation. Your Honor, does it make an awful lot of sense to get a waiver and release for everything that we do in investigating your application for employment, but then if we don't hire you, you can still sue us? Does it make a lot of sense? It doesn't make a lot of sense that anybody, especially an employer in the context of the general release and get them off the hook for anything that occurs. That doesn't make sense. And it's not just if you're not hired that you have a right to sue. What if there are other things that arise that may not be something that the applicant knew about or thought about when they signed that waiver? In this situation, we just don't have how we're going to construe as a matter of law the waiver and release. We have Ms. Nielsen who has signed an affidavit that said and clarifies what she said in her deposition. The city of Mason is wrong that she is contradicting herself. In her deposition, she said, I agree that I signed it. I've read it. I read it in the deposition, and that's what it says. No follow-up question was asked, what did you understand by that? In her affidavit, she tells us what she understood by that. And you know what? That's the only thing that makes sense because this case is predicated on the fact that Ms. Nielsen filed a charge of discrimination against the city of Tempe Police Department. She knew what Title VII was all about. It simply boggles the imagination and logic that she would knowingly sign a waiver that was going to take away her rights under Title VII when she was just leaving an employment context relative to a Title VII charge of discrimination she filed. Here we have, based on the affidavit, at the very least what we have is what Judge Tate said is a question of fact. Before you get through, you know, all your time, I want to raise an issue that's of concern to me with Appellant's case. Now, assuming that the waiver does not cover Title VII and that she can assert a claim for discrimination, I'm wondering, is there an issue of fact on pretext when the city has an outside expert, psychologist or whatever, who does an evaluation? And can you, I mean, I understand pretext comes up usually where some executive makes a statement that's thought to be pretextual for that person's company. I haven't seen it in the context of an outside consultant or expert like this. I agree we have a unique case here, but I don't think you can limit your inquiry to what Dr. Ford said. And let me tell you about Title VII and the issue of pretext that you just raised. As it concerns the adverse employment action, we submit the adverse employment action took place when it was decided that her application was going to be denied, and in the words of the city of Mesa, dequeued. And there is no controverting evidence here that that didn't happen. And it happened. And Detective Junker and Detective Newberry said it happened. What happened after that? What happened after that is, gee, we might have screwed up, we submit, and a conditional job offer was submitted contingent upon three things. Well, do you contend that the conditional job offer was also pretextual? I believe that. Or just because after that they said she passed the physical, and some thought she passed two of the three conditions. Right. I do, Your Honor. I do believe that the pretext started right there, because at that point in time we have a medical examination that's objective. She had already passed the POPAT, which is a physical agility test. She had already passed that, and the only discretionary test there was the psychological test by Dr. Ford. Now, as it relates to pretext, we have, I would submit, a case similar to, and I'll mispronounce the plaintiff's name, Chuang v. UC Davis, with all due respect to Dr. Chuang. There we had direct and we had circumstantial evidence. And as Judge Schroeder said in Godwin v. Hunt Wesson, you can have either or, or both. The direct pretextual, the direct evidence we have here is that the city of Mesa relied upon a bad thing, relied upon a wrong thing, relied upon the fact that she was litigation risk in making the denial. That's direct evidence that this Court can utilize as it relates to pretext. The evidence of that, that they relied on the fact that she had sued the city of Mesa, what evidence is there in the record of that? There's two pieces of evidence, or three at least. There's the testimony of both Detective Junker and Detective Newberry. Detective Junker was the investigator hired by the city of Mesa to do this. And Detective Junker said, number one, I spoke to Skornick, Sergeant Skornick, who's on the hiring board, and she said the application was DQed. Number two. Why? Not why. That's not evidence. Hold on. I'm not done. Detective Junker also said that I reviewed the sheet of paper in which it indicated that her application was denied. And it said, for the reason of a litigation risk. Where is that in the record? Your Honor, I don't know. He said it was for the reason of the reason. He surmised that. I don't recall that he testified that he saw that written down. He did. What he could not do, Your Honor, is say was the litigation risk associated with the charge of discrimination or was the litigation risk associated with the workers' comp claims that she was pursuing. He did say, I can't tell you what that was, but I saw it said litigation risk. And there the inferences should be in favor of Ms. Nielsen to allow a jury to make those determinations of whether that litigation risk was associated with the charge of discrimination or the workers' comp claims or both. But that's direct evidence, Your Honor. And as it relates to the circumstantial evidence, we have, as in Porter v. California said, we have a deviation from the protocol. It's uncontroverted that the city of Mesa deviated from protocol by looking into these matters of Ms. Nielsen. Their protocol was we don't look into EEOC charges. We don't look into workers' comp, but they did that. That is, that's a deviation from the protocol that suggests that there's a problem with the legitimate, alleged legitimate nondiscriminatory reason. What other things do we have that are specific and substantial relative to circumstantial evidence? We also have the fact that the city of Mesa tendered to judge, to Dr. Ford, the EEOC charge of discrimination before the evaluation. We have Dr. Ford talking to her about that charge of discrimination right off the bat, and we have Dr. Ford placing in the record in his report as a reason for referral the EEOC charge of discrimination. All of those things are circumstantial, they're specific, and they're substantial. And we submit that those, on top of the direct evidence, allow this Court to say this case goes to a jury. Thank you. Thank you. Now, I'll just note the time for rebuttal normally comes out of the opening segment, but we're going to give you two minutes extra for rebuttal. Thank you, Your Honor. And we'll add that time on for the appellee can have an extra two minutes to make sure we're fully advised. Good morning. May it please the Court, Mark Stedman on behalf of the city of Mesa. As Judge Gould touched on in his last questions, the real issue in this case is, was there competent evidence that the psychological exam that Ms. Nilsen failed was a pretext for not hiring her? The evidence, the only evidence on that was that Mesa asked her, like every other police applicant, to pass a psychological test. The evidence was that she failed the test. That was undisputed based on standard psychological tests that the psychologist testified to. Third, the evidence was that, pursuant to Mesa's own policy, that is part of the record on appeal, because she had failed the psychological exam, she was notified that her process had been completed and she would not be hired. That is undisputed. Furthermore ---- The question is, did the psychologist testify to the fact that she had failed the psychological exam, and did she report on the plaintiff? The ---- Did you mean her litigation with Tempe, Your Honor? Yes. The ---- I think, Judge, that we submit a packet of our investigation, and we submit that to the psychologist to provide them some background. I believe that the psychologist testified in his deposition that he had seen EEOC claims as part of the packet on, I think, a half a dozen or perhaps five other cases. So I think that's the practice. Now, there ---- How do you think that's risky to put that in there? Wouldn't the resulting recommendation be cleaner if you didn't have any semblance of having that having been considered by the psychologist? I agree with that, Your Honor. The plaintiffs had an opportunity to explore that in deposing Dr. Ford, and he unambiguously stated that nothing ---- let's see here, that no one from MESA interfered with his independent evaluation and that his recommendation was based exclusively on her test scores and responses during the interview. So would it have been easier? And perhaps would we not even be here had that piece of paper not been included in the packet that was submitted? Yes, I agree. But I think it's clear that Dr. Ford testified, and that has not been contradicted with any testimony elsewhere, that that information had nothing to do with his ultimate recommendation. This plaintiff's statement that she had never previously failed a psychological exam raised an issue of fact in this case? I don't believe so, Your Honor. The question of what other exams, psychological exams, she had taken, what those exams were, how they compared to MESA's, whether they were the same type of tests, whether they were close in time to MESA's exam, none of that was before the trial court. The plaintiff had an opportunity to retain psychological expert to evaluate Dr. Ford's exam and say that the questions that the standardized tests that were used were somehow improper. None of that was presented to the trial court. The plaintiff had an opportunity to say that the exams that the plaintiff did for MESA were the same as what the plaintiff had undergone perhaps for some other agency and say, therefore, maybe there's a reason to think not to trust Dr. Ford's exam. There is none of that in the record. It is we are left with MESA's, with the plaintiff's speculation simply attacking Dr. Ford's credibility. There is no conflicting evidence that MESA, that Ms. Nelson failed her exam, her psychological, standard psychological exam. Counsel, are you aware of any case from any circuit that has addressed whether a statement of an outside consultant is pretextual? No, I am not, Your Honor. And I think that is the point. That is, in fact, that is why we disagreed with even Judge Sedgwick's finding on establishing a prima facie case. Because there was a decision, because the conditional offer was made, there was an independent decision made by Dr. Ford evaluating her psychological status to serve as an officer. And, Your Honor, I'm not aware of any other, any case in any jurisdiction that says, now, I can't say that I've, you know, explored every case everywhere, but I'm not aware of one that makes the point you're asking about. But in theory, it would be odd in theory if you said that a statement of an outside expert could never be pretextual. Because sure enough, then somebody could, you know, hire a canned expert, and it might be pretextual. So does that raise a jury question? I think, Your Honor, can I imagine a case where maybe a jury question would be raised? Possibly, but I think it goes to Judge Rawlinson's question, which is, you know, what facts were before the trial court that put into question Dr. Ford's findings? You know, was the test improperly graded? Was it improperly given? Were the circumstances improper? Something to suggest that it was a pretext. I don't think that's the record that was before the trial court or on appeal. Thanks. Do you want to discuss the waiver issue? Yes, Judge. Your Honor, the question of whether a waiver would block all possible Title VII claims and other possible constitutional claims is really not before this Court. The city of Mesa is taking the position that this waiver applied to the questions that were asked during the course of her investigation into the suitability of her employment. And while it is true that the language of the waiver, actually waivers that she signed, was broad, with regard to this case, Mesa is simply asking that really what this case is about is Mesa's attempt to kind of deal with how she left Tempe. And how do we find out about that, which the trial court found was a legitimate scope of inquiry, how do we find out about that without treading in these more sensitive areas? And I think that the waiver really goes right to that inquiry, which is we should have the opportunity to ask these questions and our, you know, our detectives should be able to explore this without fear of being sued that perhaps they didn't walk that line as perfectly as they should have. And that, we think, is really the extent of the waiver that we are asking this Court. And that's the extent of what the trial court found in terms of the waiver, that as to the investigation, questions asked during the investigation and evaluation, that plaintiff waived her rights to sue Mesa for issues arising during that. The inquiry and the investigation, not a global waiver involved Title VII and ADA causes of action. That's correct, Your Honor. I understand. I think, Judge, the Your Honor's didn't understand what you just said, sir. Did you say that this waiver did not include this person's right to initiate a Title VII action? Judge, I think that the what I'm saying is that with regard to claims of the investigation, if we, for example, under if plaintiff, if in the course of our questioning on why she left Tempe, what were the issues with leaving Tempe, if in the course of that we may have touched on the EEOC claim because that was part of the questioning, to the extent that gives rise to a Title VII claim, yes, Your Honor, it is our position that the waiver would apply to that, that we, that. The waiver would apply. It would apply because I think it, I think that the waiver is, the language is broad. I think the Stroman case from this circuit I think is broad enough to say that, to say that even I believe Title VII and ADA claims can be included in a release. Would the waiver apply not to the inquiry or the investigation, but to what you did with the information that you learned? Your Honor, that is a step, I think, beyond really what we are asking for. That's what I understood your argument to be. Thank you. One of the issues on the waiver was whether I think the standard in Stroman is whether it was deliberate, voluntary, deliberate, and informed. And I think the record establishes that Ms. Nilsen was an experienced police officer, had been involved in multiple types of litigation from personal injury lawsuits to wage claims, had, in fact, the waiver directs her to consult an attorney to the extent that she didn't understand the waiver. We understand she was actually represented at the time. And so that I think the record before the trial court was clear that the Stroman standard for enforcing the waiver as to being voluntary, deliberate, and informed was satisfied. Thank you. Mesa had a right to ask plaintiffs why she left her previous job at Tempe. She also had a right to ask plaintiffs to pass a psychological exam like anyone else. There is nothing in the record to suggest that when plaintiffs asked Ms. Nilsen to pass a psychological exam, that they were doing anything different to her than anyone else. And Dr. Ford's testimony was not controverted and was unambiguous, that his decision was based exclusively on her test scores and responses during that interview, not anything that Mesa had communicated to him. Plaintiffs never presented to trial court competent evidence to question Dr. Ford's test results. Because there was no evidence that Dr. Ford's finding was a pretext, we submit that the trial court was correct in granting summary judgment to the city. And if the Court does not have any questions with regard to the 1983, the ADA, and the ACRA questions, I'll submit that on the briefs. Okay. I have none. Judge Covello or Judge Rawlinson? The panel has no questions. Thank you. Thank you very much for your argument, Mr. Stedman. Mr. Gona. Thank you, Your Honor. I'll be very brief. Two minutes. Thank you. With respect to the inquiries asked of Mr. Stedman, the inquiry relative to the reasons leaving the city of Tempe is not what the bad thing that occurred here is. The use of that information, and I think that's where this Court was going, that was used against her. It was used against her because the decision was made that her application was going to be denied and was denied because of that information that she had submitted workers' comp claims and had pursued those and that she had filed a charge of discrimination. She became a litigation risk. Dr. Ford, and that is, and I go back to that, that's direct evidence relative to pretext. With respect to Dr. Ford, certainly Dr. Ford did not say in his deposition, yes, I relied upon the bad stuff. But you look at his deposition and you look at what he asked her in her, in the interview, you look at why he put it in the report, and you look at the evidence submitted to him by the city of Tempe, and those are circumstantial markers that can be relied upon in this Court as it relates to specific and substantial evidence that supports pretext. You know, Dr. Ford said, lookit, the problem with this lady is she's a supervisory  She's a strong-willed woman. You know, this Court in Stegall said as follows. Throughout the record at page 1072, throughout the record, both Marathon and Sedato Management repeatedly echoed the all-too-familiar complaints about assertive, strong women who speak up for themselves. They're difficult. They have a negative attitude. They're not a team player. They're problematic. The district courts must reject these sexual stereotypes and learn to identify the oft-employed that could reveal illegitimate motives. We're asking this Court to provide Ms. Nielsen with an opportunity to present this case to a jury and reveal those improper motives and establish pretext. Thank you. Roberts. Thank you, sir. Can I? Yes. Judge Covello. Sir, you're an applicant to the city of Mesa. We take this release from you, and three days later, we find out that you are a litigation risk, that you've been suing towns for whatever, all kinds of employment discrimination. And we say, wow, this person is a litigation risk, and because she's a litigation risk, we're not going to hire you. And you're so notified. Now you turn around and you say to this second town, me, you say, well, you discriminated against me and retaliated because of what you found, and now I'm going to sue you. And if we don't assign a broader validity to this waiver, isn't this just something that keeps right on going on down the line? The next town finds out about you, and you get sued again. In response to that question, Your Honor, I think it relates to every circumstance you have to look at based upon the facts. Here we have a situation that Ms. Nielsen comes to the city of Mesa and applies right on the heels of leaving the city of Tempe following the charge of discrimination. She is honest with the city of Mesa as it relates to that charge of discrimination, and it's uncontroverted that the city of Mesa relied upon the litigation in which she was involved, whether it be the charge of discrimination or workers' comp claims, in denying her application. The situation that you speak of may not be that. Maybe they simply decide we're not going to touch it, and then it becomes a question, did they use that against her? Here we have direct evidence that they used a protected activity against her. And that's where this case is different than I think the general case that you submit. But my hypothetical was we're not going to hire this person because she's a litigation risk, and directly and for that reason, and we're not going to hire her. If we're not going to hire her because she engaged in that protected activity, that's a violation of Title VII. And I submit they cannot do that. Thanks very much. Thank you. Thank you. Okay. Very helpful arguments. Nelson v. City of Mesa shall be submitted.
judges: Gould, Rawlinson, Covello